Bebnabd S. Meyeb, J.
Involved in this declaratory judgment action is the constitutionality of the zoning of a three-acre parcel fronting on Middle Neck Road in the Village of Kensington. The parcel is bounded on the north by a six-foot reserve strip which is the northern boundary of the village. It fronts on Middle Neck Road for approximately 554 feet, being bounded on the south by the ornamental wall at the Beverly Road entrance to the village. It is zoned in the Residence District, in which the only permitted uses are for one-family dwellings (including *260 accessory use as the office of not more than one practitioner of medicine, osteopathy, or dentistry), schools and public buildings. To the south of Beverly Boad is the parcel which was involved in Dowsey v. Village of Kensington (257 N. Y. 221). In that case, decided in 1931, the Court of Appeals held residential zoning to be unconstitutional. Soon after that decision the Dowsey property was purchased by the village. It has ever since been used as the village hall and, therefore, has not since the Dowsey case been rezoned.
The parcel involved in this action encompasses 134,000 square feet. It was purchased by plaintiff in March, 1961. It has been zoned “ Residence ” since prior to 1931, and the only change in the ordinance affecting it since that time deleted certain permitted uses (churches, libraries, roomers). From Northern Boulevard to Steamboat Boad, a distance of two and one-half miles, all of the properties facing on Middle Neck Boad other than the subject property and the Dowsey parcel are zoned for commercial or apartment house use. In the area above Schenck Lane there are but three vacant parcels other than the subject property, one on the opposite side of Middle Neck Boad just above Embassy Court on which a commercial building is to be erected, the other two on the same side of Middle Neck Boad more than a half mile north of the subject property. In that entire area there are only three houses, two of which are used for business purposes, and only one of which is still used as a residence. Middle Neck Boad is the principal north-south street on the Great Neck peninsula and is heavily travelled. Subject property was acquired by plaintiff’s predecessor in 1932. She lived in it for about three years and thereafter sought to dispose of it. The residence was first boarded up and finally, after it fell into disrepair was torn down at the insistence of the village.
Plaintiff’s treasurer acknowledged that though plaintiff paid $175,000 for the property, its fair market value was not more than $87,500 and the balance was a premium which plaintiff paid in the expectation that an apartment house could be erected, its officers having been advised that residential zoning was invalid. The experts who testified for plaintiff put the fair market value of the property zoned “Residence ” at not more than $50,000. The village, citing Dilliard v. Village of North Hills (276 App. Div. 969), argues that since plaintiff bought the property with knowledge of its zoning and with the intention of making a profit, it cannot prevail. While one who knowingly acquires land for a prohibited use cannot obtain a variance of the zoning ordinance on the ground of hardship (Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 86, 89) he is not thereby *261 barred from testing the validity of the ordinance, for “ [knowledge of the owner cannot validate an otherwise invalid ordinance ’ ’ (Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 500). On this point the Dilliard case can no longer be deemed good law (see Plymouth Bldrs. v. Village of Lindenhurst, 284 App. Div. 895). This is not to say that the premium over the fair market value paid by plaintiff need be taken into consideration in determining whether it is economically feasible for plaintiff to use the property for any of the purposes permitted by the zoning. Since such a premium reflects the probability that the zoning will be set aside or changed, to take it into consideration would be for the court to determine constitutionality by considering the probability that it would hold the zoning unconstitutional! Moreover, in view of the much greater value of property zoned for multiple dwelling or commercial use over that of property residentially zoned, to take such a premium into consideration would permit a purchaser, by increasing the premium paid, to increase the probability that residential zoning would be set aside. Nonetheless, such a premium cannot disqualify a purchaser from urging unconstitutionality in relation to the fair market value of the property.
Plaintiff’s expert testified that, zoned for apartment house use, the property is worth $5 per square foot, or a total of $670,000. The village asks that this testimony be stricken in view of the rule that ‘‘ even economic loss to an affected property owner, does not render a zoning ordinance confiscatory” (Levitt v. Incorporated Vil. of Sands Point, 6 N Y 2d 269, 273; Matter of Wulfsohn v. Burden, 241 N. Y. 288, 302; Matter of Setauket Development Corp. v. Romeo, 18 A D 2d 825, 826). Zoning is an exercise of the police power. Against an otherwise valid exercise of the police power the due process clause is not an absolute protection. “ As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not all cases there must be an exercise of eminent domain and compensation to sustain the act ” (Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 413). “ There is no set formula to determine where regulation ends and taking begins. Although a comparison of values before and after is relevant * * * it is by no means conclusive ” (Goldblatt v. Hempstead, 369 U. S. 590, 594). Implicit in the reference to “ the extent of *262 diminution ” and to “ values before and after ” is the thought that an existing value has been reduced. On this basis, this court held in Gardner v. Le Boeuf (24 Misc 2d 511, 519, affd. 15 A D 2d 815) that where the property was zoned residential when plaintiff acquired it he never had a right to its value if zoned commercial and, therefore, that evidence of what that value would be was irrelevant. The Pennsylvania Goal Go. and Goldblatt cases were in fact cases involving diminution of existing rights. So, also, was Hadacheck v. Los Angeles (239 U. S. 394) referred to in Goldblatt. Evidence of comparative values was received and considered in at least the following cases: Dowsey v. Village of Kensington (supra); Rockdale Constr. Corp. v. Incorporated Vil. of Cedarhurst (94 N. Y. S. 2d 601, affd. 275 App. Div. 1043, affd. 301 N. Y. 519); Matter of Isenbarth v. Bartnett (206 App. Div. 546, affd. 237 N. Y. 617); Tamaccio v. Town of Hempstead (204 N. Y. S. 2d 466); Riviere v. Town of Hempstead (40 Misc 2d 152) and Brandmeier v. Incorporated Vil. of Rockville Centre (N. Y. L. J., Feb. 3, 1950, p. 444, col. 2); and reduction in value is referred to in the memorandum decision in Matter of Hayes v. City of Yonkers (1 A D 2d 1031). The record in the Dowsey case shows that the property was first zoned for residential use without restriction as to number of families, and that prior to the 1926 ordinance plaintiff had the right to build apartments on her land. The Isenbarth, Tamaccio, Riviere and Brandmeier decisions likewise concerned the imposition of zoning of greater restriction than had been imposed. So, also, did Matter of Hayes (see Record on Appeal, fol. 159). Only in Rockdale was there consideration of the commercial value of property that had at all relevant times been zoned residential, and there the evidence came in without objection (Record on Appeal, fols. 116 and 165). Plaintiff’s argument that commercial value must be considered because the probability of a zoning change would be considered in fixing the value of the property if condemned proves too much, for the rule in condemnation is merely that the premium that a buyer would pay for the probability of a zoning change rather than the value of the property considering the change as an accomplished fact is to be compensated for (Masten v. State of New York, 11 A D 2d 370, affd. 9 N Y 2d 796). The court concludes that the testimony in question must be stricken.
Nonetheless, the residential zoning of plaintiff’s property cannot be sustained. Involved in the determination whether the zoning precludes the use of the property for any use for which it is reasonably adapted are at least the following factors: the character of the neighborhood, the zoning and use of properties *263 nearby, the suitability of the subject property for the uses to which restricted, the extent to which removal of the restriction will detrimentally affect nearby property, the length of time since structures of the type permitted by the restriction have been built in the area, and the balance between the welfare of the public and the rights of the private owner (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118; Dowsey v. Village of Kensington, supra, pp. 226, 230; Matter of Eaton v. Sweeny, 257 N. Y. 176, 183; see Vernon Park Realty v. City of Mount Vernon, supra, p. 499; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 230-233; Rockdale Constr. Corp. v. Incorporated Vil. of Cedarhurst, supra; 8 McQuillin, Municipal Corporations [3d ed. rev.], §§ 25.40-25.46).
There is no demand for the property for school or public building use, and the court is satisfied that, even considering possible professional accessory use, the influence of the surrounding entirely commercial and apartment house area would make impossible the sale of residences along Middle Neck Road, however the property were to be subdivided, at a price compatible with the applicable tax rates. The last single-family residence built between Northern Boulevard and Steamboat Road was constructed in 1924. Under residential zoning plaintiff’s predecessor could, prior to plaintiff’s purchase, obtain no offer higher than $40,000 notwithstanding the fact that there has been great demand for single-family residential land in the Great Neck Peninsula area. While the property is physically usable for the erection of one-family residences, such residences are not economically feasible in view of the use of the surrounding property and the character of the area on which the subject property borders. The sales offered by the village’s expert to prove otherwise are not, in the court’s estimation (after a view as stipulated by the parties), persuasive. The only one really comparable as to environs is 211 East Shore Road and it maybe differentiated from the residences that could be put on subject property in terms of the size and wooded character of its plot. The Embassy Court development is on the northern border of the village near plaintiff’s property but it is separated from Middle Neck Road by a 400-foot parking lot and the few residences in the development that abut the parking lot are screened from it. While it is true, as the village argues, that it cannot control the use of land outside its borders, it cannot in zoning land within its borders ignore the outside uses, as the Dowsey, Rochdale, Isenbarth and Brandmeier cases (supra) all show.
*264 The village has sought to show by the testimony of its expert that there is no need for stores or apartments in the area and that an apartment and store building would bring to the property (assuming 50% land coverage) 210 people and 50 to 70 cars per floor, which would cause traffic congestion and overcrowding at the village entrance and detract from the value of residences within the village. Since plaintiff is not claiming “ such urgent business need as to render unsuitable ” the zoning (Matter of Hayes v. City of Yonkers, supra), the first portion of the testimony has little bearing. As for the claimed detriment to nearby properties, the court does not accept the expert’s conclusion, regarding his attempt to differentiate the adverse effect of apartments and stores on the subject parcel from the adverse effect of existing commercial and apartment uses on Middle Neck Road as untenable. Nor, in view of the location of the property on the periphery of the village, and the control that the village can exercise over the location of entrances, does the court accept traffic and pedestrian congestion as the true legislative concern. More detailed testimony of health and safety hazards was presented in the Dowsey case by a planning consultant (Record on Appeal, fols. 726-731), a fire chief (fols. 877-881) and the village Health Officer (fols. 1050-1068) and argument based on that testimony was urged upon the Court of Appeals (appellants’ brief, pp. 34-35). The argument was rejected, the court finding (257 N. Y. 221, 229-230) that “the inference from the evidence is clear that these claims are without substance and that the zoning ordinance has been framed for the purpose of excluding such buildings from the village in order to preserve it as a secluded quiet community of one-family detached homes.”
In balancing the public welfare against the rights of the private owner it is, thus, aesthetic considerations alone that weigh on the public side. The village points to People v. Stover (12 N Y 2d 462, 467) as recognizing “ that aesthetics is a valid subject of legislative concern” and “that reasonable legislation designed to promote that end is a valid and permissible exercise of the police power.” What was there under consideration, however, was an ordinance proscribing conduct offensive to visual sensibilities; what is here involved is a regulatory ordinance which, as has been demonstrated, causes hardship to the property owner. On balance, the court deems this a case “in which the legislative body goes too far in the name of aesthetics ” (ibid., p. 468).
It follows that defendants’ motions at the end of plaintiff’s case and of the whole case, on which decision was reserved, must *265 now be denied. Judgment will be granted declaring the present zoning of the property arbitrary and unreasonable. It need hardly be added that the court is not to be understood as having expressed any opinion concerning the use of the property for apartments or stores. Its function is limited to a determination of whether the present zoning of the property is constitutional, not what the zoning should be. Determination of the “most appropriate use of land ” is for the Village Board (Village Law, § 177).