Bebnaed S. Meyeb, J.
This action involves two properties in the Village of Lake Success. As stipulated by the parties, the court has viewed the properties and the environs. The north-south artery of the village is Lakeville Road. Generally, the northern boundary of the village is a substantial distance south of Northern Boulevard, but for several hundred feet on either side of Lakeville Road it juts northward and reaches Northern Boulevard. Initially the neck of land thus described was zoned Business “ A ” for a distance of 400 feet south of Northern Boulevard and Business “B” for the remainder of the distance to Cumberland Avenue on the east side of Lakeville Road and to University Road on the west side of Lakeville Road.
The first of the subject parcels, hereafter referred to as the east parcel, covers all of the area formerly zoned Business “ A ” on the east side of Lakeville Road, except the 100 by 100-foot parcel at the southeast corner of Northern Boulevard and Lake-ville Road which is occupied by a gasoline station. The east parcel also takes in a few feet of the former Business “ B ” area and includes lots outside the village boundary but contiguous with the eastern boundary of the parcel which give access from the parcel to Summer Avenue. The east parcel has 228-foot frontage on Northern Boulevard, 324-foot frontage on Lakeville Road, and is approximately two acres in size. It was used as a hotel and when acquired by plaintiff was in use as a restaurant. The lease permits the landlord to withdraw from its terms the land fronting on Lakeville Road to a depth of 100 feet at any time upon 30 days’ notice. The remainder of the property formerly zoned Business “ B ” on the east side of Lakeville Road is used as a nursery school. There is a drop in grade of some 15 feet from Summer Avenue to Lakeville Road.
The second subject parcel, hereafter referred to as the west parcel, is about two and one-half acres in size and includes 20 lots which front on the west side of Lakeville Road beginning at a point 105 feet south of Northern Boulevard and run south for 400 feet, and Lots 39, 40, 41 and 45 through 59 inclusive fronting on University Place. University Place is the next street west of Lakeville Road and, though plaintiff does not own Lots 42, 43 and 44, most of the University Place lots are contiguous to most of the Lakeville Road lots. The plaintiff also owns a parcel, not involved in this proceeding, at the southeast corner of University Place and Northern Boulevard, fronting 135 feet on Northern Boulevard which is joined to the west parcel by a neck of land 10.5 feet wide. All of the west parcel is now vacant land. On the southwest corner of Lakeville Road and Northern Boulevard is a gasoline station. The land *267 fronting on Lakeville Road south of the west parcel a distance of 260 feet to University Road is occupied by two former residences now used for business purposes and a taxpayer containing five small stores. The land fronting on University Place a distance of 200 feet to University Road is occupied by residences. There is a drop in grade of some 15 feet from Lakeville Road to University Place.
Plaintiff assembled the properties thus described in 1951. On June 30,1960, he applied for permits to erect a bowling alley and a junior department store on the west parcel. The application was denied July 25 for reasons not here material. On June 21, 1960, the Village Planning Commission recommended rezoning the area so that the business areas would be limited to a depth of 150 feet along Northern Boulevard and along each side of Lakeville Road, and that the remainder be rezoned Residence “ C ”. On July 5, 1960, a joint meeting of the Planning Commission and the Board of Trustees was held at which Hugh Pomeroy, consultant to the village, was present. He recommended that the entire area except the Northern Boulevard frontage and the existing business uses south of the west parcel be rezoned residential. On July 27, 1960, the ordinance was amended in conformance with that recommendation. Except for the northernmost 100 feet of the east parcel, the two parcels are now in Residence “ C” district, in which permitted uses are one-family dwellings, including accessory professional office use, churches, public schools or libraries or municipal buildings, truck gardening and nurseries. Plaintiff attacks the 1960 rezoning as (1) not in accordance with a comprehensive plan, (2) confiscatory, and (3) discriminatory.
The phrase “ in accordance with a comprehensive plan ” may be understood to mean (1) conforming to a master plan, (2) broad in scope of coverage, (3) all inclusive in control of use, height and area, or (4) internally consistent zoning based on a rational underlying policy (Haar, “In Accordance With a Comprehensive Plan”, 68 Harv. L. Rev. 1154). The second and third meanings are not here involved. As to the first, the only zoning case found in which conformance to a master plan has been considered is Matter of Fornaby v. Feriola (18 A D 2d 215) in which the ordinance specifically provided that “ use shall not conflict with the direction of building development in accordance with any Master Plan ”. Most New York cases concerned with the meaning of the phrase have dealt with spot zoning and, while adopting no clear definition, have analyzed the ordinance and the fact situation presented in terms of consistency and rationality (Rodgers v. Village of Tarrytown, 302 *268 N. Y. 115, 124; Connell v. Town of Granby, 12 A D 2d 177; Twenty-One White Plains Corp. v. Village of Hastings-on-Hudson, 14 Misc 2d 800, affd. 9 A D 2d 934; Linn v. Town of Hempstead, 10 Misc 2d 774; Santmyers v. Town of Oyster Bay, 10 Misc 2d 614; Soule v. Town of Perinton, 152 N. Y. S. 2d 734, app. dsmd. 2 A D 2d 834).
The village relies on the statement of “ developmental policy ” incorporated in its ordinance in 1958, which reads as follows:
“ Taking into account considerations of
“ (a) the conservation of existing and potential property values in the Village:
“ (b) the character of existing development in the Village:
“ (c) the physical characteristics of the terrain of the Village and the suitability of the land of the Village for various uses :
“ (d) the physical situation of the Village and the functional relationships of the uses of the land therein to the existing and prospective development of the inter-community area consisting of the Great Neck-Manhasset areas and adjoining areas in Nassau County, New York
“ it is determined
“ (a) that the most appropriate predominant use of land throughout the Village consists of low-density one-family residential development, carefully regulated as to quality;
11 (b) that all other uses in the Village shall be either
“ 1. related to such residential use in a community sense, such as schools, churches, and other community institutions; or
“ 2. economically related to such residential use by reason of contributing to a tax base for the Village that will make possible the adequate provision of the public facilities and services that are necessary for sound residential development;
“ (c) that all such non-residential uses shall be limited in location, size and character to the extent that they will satisfactorily perform their respective functions, as aforesaid, in a manner that will not detract from the predominatly [sic] low-density one-family residential character of the Village or hinder further development of like nature and quality.”
It argues that retail service uses are not encompassed within that statement. The argument is somewhat disingenuous, however, for (1) had the village fathers so construed the statement they would have amended the ordinance in 1958 to exclude such uses from the permissible ones, and (2) continuance of the *269 existing retail service uses south of the west parcel would, because inconsistent with the statement, discriminate against the property that was rezoned.
"While the statement does not entirely exclude retail service uses, it does establish the underlying policy of the zoning ordinance. The evidence shows that Lakeville Eoad in the area of the subject parcels is now a source of traffic difficulty and that the difficulty would be increased by business uses on the subject parcels. Plaintiff’s argument that there must be “ some very important reason” for a change in zoning has long ago been discredited (Village Law, § 179; Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121, supra; Levitt v. Incorporated Vil. of Sands Point, 6 N Y 2d 269, 273), but if such a reason were required the traffic problem is quite real and is a valid basis for action by a board charged with adopting regulations “ designed to lessen congestion in the streets ’ ’ and ‘ ‘ to facilitate the adequate provision of transportation” (Village Law, § 177). Moreover, residential zoning is consistent not only with the policy established by the statement but with the actual use of land along Lakeville Eoad withiñ the village. Nor in view of the shopping available in nearby areas outside the village, and of the fact that the last commercial building erected in the area of the subject parcels was built in 1956, can the court say that the Village Board was arbitrary in its conclusion that more shopping facilities in that area are not required. The court concludes that the 1960 ordinance amendment does not violate the statutory mandate that it “ be made in accordance with a comprehensive plan.”
The claim that the amendment is as to plaintiff’s properties confiscatory is predicated on the reduction in value of the properties as a result of the zoning and the claim that Eesidenee “ C ” zoning precludes use of the properties for any use for which reasonably adaptable. The village having upzoned the subject properties the court concludes, on the reasoning set forth on this point in Chusud Realty Corp. v. Village of Kensington (40 Misc 2d 259) decided herewith, that evidence of values before and after the rezoning is relevant and that the village’s motion to strike that testimony must be denied. It finds the value of the east parcel zoned for business to be, in round figures, $425,000 and under present zoning to be $165,000, a reduction of $260,000. It finds the value of the west parcel zoned for business to be, in round figures, $250,000, and under present zoning to be $46,000, a reduction of $204,000. [In arriving at present values the court in light of Scarsdale Supply Co. v. Village of Scarsdale (8 N Y 2d 325) has given no con *270 sideration to the value of the nonconforming use of the east parcel. For reasons hereafter indicated, it has accepted plaintiff’s values as to the west parcel but defendant’s values as to the east parcel.] It further finds that plaintiff’s investment in the east parcel is $160,000, and in the west parcel, including brokerage, legal fees and taxes $65,000. While the reductions in value are substantial and while there is a partial loss of investment as to the west parcel, Hadacheck v. Sebastian (239 U. S. 394) which sustained an ordinance notwithstanding a reduction in value from $800,000 to $60,000, and Levitt v. Incorporated Vil. of Sands Point (6 N Y 2d 269, supra) make clear that neither factor by itself constitutes confiscation. Against the loss of the property owner is to be balanced the public welfare; other factors to be considered are: the character of the neighborhood, the zoning and use of properties nearby, the suitability of the subject property for the uses to which restricted, the extent to which removal of the restriction will detrimentally affect nearby property, the length of time since structures of the type permitted by the restriction have been built in the area (see Chusud Realty Co. v. Village of Kensington, 40 Misc 2d 259, supra).
With respect to the east parcel, the court finds the ordinance not confiscatory. Except for the Northern Boulevard frontage which is still zoned business and the retail service uses south of the west parcel, the character of the neighborhood is still residential. The nursery school use to the south is not detrimental to a residential use; the grade of the property would not prevent the building of salable residences; there is access from Sumner Street and the size and shape of the residential portion of the parcel is such that a plot plan with access from Sumner Street and which would require no one to back out onto Lakeville Road seems feasible, or at least has not been demonstrated to be infeasible. The proximity of the Northern Boulevard business uses is not so detrimental an influence in view of the Sumner ■Street access and the possibility of screening as to preclude residences. The area may fairly be compared with the Alfieri property on the southwest corner of Lakeville Road and University Road, which sold on November 16, 1961 for $1 a square foot and on which a residence has been erected. The detriment to public welfare if traffic stemming from business use of the east parcel is added to the existing traffic problem is substantial. Though a reduction of $250,000 in value is also substantial there is, short of actual and substantial expenditures, no vested right in a zoning classification (New York Trap Rock Corp. v. Town of Clarkstown, 1 A D 2d 890, affd. 3 N Y 2d 844; Town of *271 Hempstead v. Lynne, 32 Misc 2d 312) and it has not heen shown that residential zoning precludes use to which the property is reasonably adaptable.
With respect to the west parcel, the situation is, however, quite different. The gasoline station on the north, the retail service uses on the south and the Lakeville Road traffic make the Lakeville Road frontage undesirable for residences. Recognizing the latter factor, the village suggests that residences on the Lakeville Road lots could be given access through University Place by driveways or driveway easements. The suggestion overlooks the modest character of the residences now on the west side of University Place, the undesirability of “piggyback ’ ’ homes to most buyers, the problem, particularly in snowy weather, created by the grade of the driveway that would be required. The dilemma of such access or the frustration of becoming embroiled in Lakeville Road traffic, particularly in that created by cars backing out of the retail service area on the south, differentiates the west parcel from the Alfieri property (access to which is from University Road) and warrants acceptance of plaintiff’s valuation of these plots. As for the University Place frontage, Lots 39, 40 and 41 would be unusable except as adjuncts of Lakeville Road plots, a use which would add little to the selling price. Moreover, the character of the existing residences on the west side of University Place would add to the difficulty of selling residences on the University Place frontage at prices consistent with building costs and the cost of the land involved. Removal of the residential restriction can have relatively little detrimental effect on nearby properties in view of the presence of the retail services uses and the fact that until 1960 the west parcel was entirely zoned for business. While the Alfieri residence has recently been built nearby, it is not comparable for the reasons indicated above. The court concludes that the shape of the west parcel, its terrain and its surroundings differentiate the west parcel from the east parcel, that as to the west parcel plaintiff has sustained its burden of showing that residential zoning precludes use for any purpose to which it is reasonably adaptable, and that, because of that fact, and notwithstanding the public benefit involved in such zoning, it cannot be sustained.
There exists a further reason for invalidating the ordinance: in failing to reclassify the property south of the west parcel now devoted to retail service uses, it denies plaintiff equal protection of the law. Discrimination is not per se invalid, but discrimination without reasonable basis in classification is. That the property is now devoted to business use furnishes a basis for *272 according it nonconforming status; indeed, an ordinance failing to protect existing nonconforming uses may be a denial of due process (Town of Somers v. Camarco, 308 N. Y. 537; cf. Matter of Harbison v. City of Buffalo, 4 N Y 2d 553 and Town of Somers v. Camarco Contrs., 24 Misc 2d 673, affd. 12 A D 2d 977 and 13 A D 2d 531; but, see, Matter of Engelsher v. Jacobs, 5 N Y 2d 370, 375). “ The rationalization of exempting previously existing non-conforming uses from the requirements of the ordinance is that vested rights have been obtained by the owner which cannot summarily be liquidated, that the zoning statutes and the ordinance as enacted contemplate their eventual elimination either through obsolescence or through the provisions against rebuilding in case of destruction, or the prohibition of alterations, repairs, enlargement of use and similar restrictions, all of which have been held valid.” (Rathkopf, Law of Zoning and Planning [3d ed.], pp. 7-19.) Due process requires the protection of existing uses, but not their exemption from the zoning plan (Molnar v. Henne & Co., 377 Pa. 571; see Stone v. Cray, 89 N. H. 483; Sampere v. City of New Orleans, 166 La. 776, affd. 279 U. S. 812). In according the retail service use properties business classification, the village granted to their owners not the limited right to continue existing use but the very much more valuable right to change the use of their properties to any purpose permissible in a business zone. Neither the surrounding residential uses, nor the nature of the traffic problem, nor any other circumstances with respect to the retail service use properties, other than their present nonconforming uses, differentiates them from the west parcel. No distinction can be drawn on the basis of the former Business “ A ” and Business “ B ” zoning, for part of plaintiff’s west parcel was in the same zone (Business “ B ”) as was the retail service use area. The court is as to the west parcel ‘ ‘ able to say that there is ‘ no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched ’ ” (Watson v. Maryland, 218 U. S. 173, 179). The ordinance is, therefore, discriminatory as to the west parcel.
The ordinance as enacted also discriminated against the east parcel for the reasons above stated and for the further reason that the greater part of the restaurant use is in the area zoned residential. However, there is, as above indicated, a sufficient difference between the east parcel and the west parcel to warrant their being differently zoned. In view of that fact and of the court’s holding that the west parcel and the retail service use area must be treated similarly, the apparent discrimination in the ordinance as enacted becomes unreal. The difference *273 between the east and west parcels furnishes reasonable basis for treating the east parcel differently than the retail service use area.
Judgment will, therefore, be entered declaring Ordinance No. 60 unconstitutional as to the west parcel but constitutional as to the east parcel.