**Eleanor LERNER, Plaintiff,**
**v.**
**TOWN OF ISLIP, Defendant.**
**No. 67 Civ. 166.**

United States District Court
E. D. New York.
Aug. 10, 1967.

Rathkopf & Rathkopf, Brooklyn, N. Y., for plaintiff.

Anthony Pace, Islip Town Atty., East Islip, N. Y., for defendant.

## OPINION and ORDER

WEINSTEIN, District Judge.

Plaintiff, owner of some 62 acres in the Town of Islip, seeks a judgment declaring that the applicable Town zoning ordinances violate her rights under the Fifth and Fourteenth Amendments to the United States Constitution. See 28 U.S.C. § 2201. She contends that reclassification of her property in December, 1962 as Residential AAA—requiring a minimum lot size of 40,000 square feet—effectively prevents its being utilized and amounts to an unconstitutional taking.

Defendant has moved to dismiss on the grounds that this Court: (1) would perform a legislative act in granting a remedy, and (2) should abstain and leave the plaintiff to seek her remedy in a state court. Neither contention is valid.

## I. LEGISLATIVE CAPACITY

Paragraph 3 of plaintiff's prayer for relief can be read as a request that the Court declare the property reasonably adapted for use as a Business District—in effect, that it rezone. Courts will refuse to do more than declare a zoning ordinance constitutionally invalid as applied, leaving rezoning to local authorities. See, e. g., Chusud Realty Corp. v. Village of Kensington, 40 Misc.2d 259, 265, 243 N.Y.S.2d 149, 155 (Sup.Ct.1963), aff'd, 22 A.D.2d 895, 255 N.Y.S.2d 411 (2d Dep't 1964). But cf. Masten v. State, 11 A.D.2d 370, 206 N.Y.S.2d 672 (3d Dep't 1960), aff'd, 9 N.Y.2d 796, 215 N.Y.S.2d 508, 175 N.E.2d 166 (1961), (reasonable probability of imminent zoning change supported increased condemnation award on basis of reasonable new zone). The essence of the remedy sought—a declaration that a zoning ordinance is invalid as applied—is included within the standard judicial pharmacopoeia. Excessive demands for relief do not warrant dismissal of the entire case.

## II. ABSTENTION

### A. Local Interest in Zoning.

Defendant's second argument—that zoning is so peculiarly a matter of local concern that a federal court should abstain from exercising its jurisdiction—has allure. The state has divided the responsibility for zoning among its smaller governmental units—its towns, cities and villages. N.Y. Town Law, McKinney's Consol.Laws, c. 62, Art. 16; N.Y. Village Law, McKinney's Consol.Laws, c. 64, Art. VI–A. Cf. N.Y. Statute of Local Governments, McKinney's Consol. Laws, c. 58–A, Art. 2, § 10(6). So clear is this pattern that the very lack of area-wide planning in the face of the haphazard spread of a huge northeast United States megalopolis has been sharply criticized by students of this subject. See, e. g., New York State Office for Regional Development, Change, Challenge, Response, A Development Policy for New York State, p. 76 (1964) ("planning which starts at the city center and ends at the metropolitan boundary is obviously too limited to deal with the statewide growth of tomorrow. * * * The result has been a criss-cross of lines of authority and responsibility"); Regional Plan Association, The Region's Growth, p. 24 (1967) ("There never has been a national policy for the allocation of population and employment among various parts of this country * * *"); Abrams, The City is the Frontier, pp. 215–220 (1965) (federal programs should be recast to meet "not only the needs of cities but also of the regions as a whole"); Babcock, The Zoning Game, p. 174 (1966) ("the federal govern-

ment senses that coordination in planning * * * should be a prerequisite to federal aid").

In view of the prevailing structure of local land control, it seems reasonable to urge that questions relating to zoning be restricted to state courts, to be handled initially by judges whose locus of jurisdiction is normally smaller than that of federal judges. Such a policy would accord with that governing administrative review in New York zoning cases; review is by Boards of Appeals made up of local representative citizens "[who] may act upon [their] own knowledge of conditions and * * * [their] own personal inspection". Community Synagogue v. Bates, 1 N.Y.2d 445, 454, 154 N.Y.S.2d 15, 22, 136 N.E.2d 488, 493 (1956).

Recognition of this pattern of land regulation has apparently influenced some federal courts to abstain from deciding zoning cases. See Overhill Corp. v. City of Grand Junction, 186 F.Supp. 69 (Colo. D.C.1960) (abstention proper to allow state courts to determine state issues and thus possibly avoid decision of federal constitutional question); McLarty v. Borough of Ramsey, 270 F.2d 232, 234–235 (3d Cir. 1959) (dictum on propriety of abstaining in zoning cases). Nevertheless, most federal courts decide zoning disputes—relatively few though they be compared to those in state courts—without referring to the abstention doctrine. See, e. g., Valley View Village v. Proffett, 221 F.2d 412 (6th Cir. 1955); Robertson v. City of Salem, 191 F.Supp. 604 (D.Ore.1961). Cf. Morrison v. Pettigrew, 14 F.2d 453, 456 (E.D.N.Y.1926) (duty of state courts "to construe their own statutes is rarely interfered with by federal courts", but zoning challenge held for trial on facts).

■■ A federal court may not surrender its jurisdiction once it is properly invoked "[i]n the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise". Meredith v. City of Winter Haven, 320 U.S.

228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943). Unless this case falls within some recognized exception, therefore, the federal court must retain jurisdiction to determine whether "the action of the zoning authorities comes within the ban of the Fourteenth Amendment". Nectow v. City of Cambridge, 277 U.S. 183, 189, 48 S.Ct. 447, 448, 73 L.Ed. 842 (1928).

### B. Doctrine of Abstention not Applicable.

Commencing with Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the United States Supreme Court began developing a theory of abstention to justify the non-exercise of federal jurisdiction in a number of situations. The doctrine's limits have not been precisely marked, and recent cases suggest that it is losing its charm. See, e. g., Note, Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era, 80 Harv.L.Rev. 604 (1967). In any event, it is clear that the factors which have been invoked to justify withholding federal relief, on the most generous interpretation of the abstention doctrine, are not present in the instant case. See generally Mishkin, Supplementary Materials on the Federal Courts, ch. 13 (1966); Wright, Federal Courts, 169–77 (1963); IA Moore, Federal Practice ¶¶ 0.202, 0.-203; American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts, Proposed U.S. C. § 1371(d), pp. 28–31, 157–74 (Tent. Draft No. 5, 1967); Note, Judicial Abstention from the Exercise of Federal Jurisdiction, 59 Colum.L.Rev. 749 (1959).

### 1. Federal Constitutional Determination Not Avoided.

Abstention has been applied to avoid unnecessary constitutional determinations where litigation in a state court on state grounds might obviate the need for a decision on federal constitutional grounds. See, e. g. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643 (1941). In the instant case, however, there is no question of state law preliminary to, or independent

of, federal constitutional issues. The state and federal constitutional issues are essentially "the same" and are the only issues in the case. Village of Euclid, Ohio, v. Ambler Realty Co., 272 U.S. 365, 386, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016 (1926).

## 2. *State Law Not Unclear.*

Abstention has been approved where a material state statute is unclear and the state courts have not yet had an opportunity to construe it. See, e. g., City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 640, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) (district court directed to hold case while parties "repair" to state courts for interpretation of state law); Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959) (state courts must be given first opportunity to interpret statute creating new highway program); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (proceeding stayed until state court could interpret statute permitting condemnation). In this case plaintiff is not complaining of the constitutionality of the state statutes authorizing the zoning ordinance or of the zoning ordinance generally; she contends only that the ordinance as applied to her particular property amounts to an unconstitutional taking.

There is no point, as in the City of Meridian or Louisiana Power & Light actions, in holding the case while the parties "repair" to the state courts for a decision eliminating the state issues, for there are no separate state issues in the case. We do not have here what Professor Mishkin refers to as "a major, unstructured issue of state policy" (Mishkin, Supplementary Cases and Materials on Federal Jurisdiction, ch. 13, p. 28 (1966)), upon which the state should be allowed to speak before a federal court decides particular disputes.

## 3. *Comprehensive State Regulatory System Not Threatened.*

One line of cases has approved abstention to avoid interference with a state's comprehensive regulatory system.

In Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Court ordered dismissal of an action seeking to enjoin an order of the Texas Railroad Commission dealing with the regulation of a Texas oil field. The Court, in the course of a detailed analysis of the state's oil and gas program, emphasized that state judicial review had been limited to a single court in order to forestall the confusion that might arise from multi-court review of a closely integrated series of regulations governing the oil fields where changes as to one property owner might have an effect on the entire state regulatory scheme. The Court noted that "[c]onflicts in the interpretation of state law * * * are almost certain to result from the intervention of the lower federal courts." 319 U.S. at 334, 63 S.Ct. at 1107. In a later case, Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), the railroad sought to enjoin the Commission from enforcing its order prohibiting plaintiff from discontinuing passenger service on which it was sustaining a loss. The Supreme Court in dismissing the case stated: "[a]s adequate state court review of an administrative order based upon predominantly local factors is available to [plaintiff], intervention of a federal court is not necessary for the protection of federal rights." 341 U.S. at 349, 71 S.Ct. at 768.

In this line of cases the dominant consideration is a desire not to cause state-federal friction by disrupting an integrated scheme of state administrative action. In the field of zoning, however, there is no single source of state judicial or administrative control. Fragmented responsibility and piecemeal review are built into New York's zoning system. Generally, each village, town and city has its own board of zoning appeals. See N.Y. Village Law § 179–b, (board mandatory); N.Y. Town Law § 267 (board mandatory); N.Y. General City Law, McKinney's Consol.Laws, c. 21, § 81 (board permissible). State judicial review is equally decentralized. Whether

review is by an Article 78 proceeding or by an action for a declaratory judgment, venue properly lies in the county where the zoning authority complained of is located. CPLR 504, 506(b). It is impossible to say under the circumstances that an appeal for redress to the federal courts by a property owner threatens to undermine the state's land use program.

■ Nor will retention of federal jurisdiction interfere with state administrative action; administrative action is not possible on the facts of this case. New York courts have consistently held that a property owner with a large parcel of land, who is claiming that a zoning ordinance is unconstitutional as applied, cannot obtain administrative relief from a board of zoning appeals. Anderson, Zoning Law and Practice in New York State § 21.07 (1963). The Court of Appeals has stated that an application for a variance to rezone 127 acres "would be futile * * * since the Zoning Board of Appeals has no power to remake the zoning map under the guise of granting a variance." Levitt v. Incorporated Village of Sands Point, 6 N.Y.2d 269, 273, 189 N.Y.S.2d 212, 214–215, 160 N.E.2d 501, 503 (1959). See also Hess v. Zoning Board of Appeals of Village of Sands Point, 17 Misc.2d 22, 23, 188 N.Y.S.2d 1028, 1029 (Sup.Ct.1955) ("I cannot believe that the purpose of a statute designed for granting a variance to provide for individual contingencies can be construed to be so broad that forty acres can with one stroke be lifted out of a Residence A zone and placed in an entirely different zone. * * * this would constitute legislation which can never be accomplished by an administrative body"); Gardner v. Leboeuf, 24 Misc.2d 511, 204 N.Y.S.2d 468 (Sup.Ct. 1960), aff'd without op., 15 A.D.2d 815, 226 N.Y.S.2d 678 (2d Dep't 1962) (19 acres).

■ Under the New York scheme of zoning, the doctrine of exhaustion of administrative remedies has no bearing on a case such as this. No "effort to obtain a building permit or apply to the zoning board of appeals for relief" is required. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 386, 47 S.Ct. 114, 117, 71 L.Ed. 303, 54 A.L.R. 1016 (1926).

### C. Lack of Special Circumstances.

Even were it possible to stretch the abstention doctrine to include this case, the Court finds insufficient special circumstances to warrant "a discretionary exercise of a court's equity powers" to deny a hearing. Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964). We decline to abstain from exercising jurisdiction.

The motion to dismiss is denied.

So ordered.