438 F.2d 213
 David I. McCAHILL, Appellant,
v.
BOROUGH OF FOX CHAPEL, a Municipal corporation.
 No. 18940.
 United States Court of Appeals, Third Circuit.
 Argued Dec. 8, 1970.
Decided Feb. 10, 1971.
 
 Gilbert E. Morcroft, Pittsburgh, Pa., for appellant.
 Rex Rowland, Buchanan, Ingersoll, Rodenwald, Kyle & Buerger, Pittsburgh, Pa. (M. Bruce McCullough, Pittsburgh, Pa., on the brief) for appellee.
 Before ALDISERT, ADAMS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 A 1938 zoning ordinance in the Pennsylvania borough of Fox Chapel providing for a minimum lot size of three acres was amended in 1964 to permit lots of two acres if drawn from a nineacre tract. Appellant owns a parcel of 4.2568 acres. He contends that the ordinance and its amendment prevent his lawful utilization of his land and thus amount to an unconstitutional taking under the Fifth and Fourteenth Amendments. In the district court he unsuccessfully sought a declaratory judgment that the ordinances are unconstitutional. The court granted defendant's motion to dismiss on the ground 'that the cause of action was not a case or controversy ripe for judicial determination in that plaintiff has not exhausted his specific administrative and statutory remedies.' In the view we take of this case, it becomes necessary only to discuss whether appellant's complaint presented an 'actual controversy' under the Federal Declaratory Judgment Act, 28 U.S.C. 2201.[1]
 
 
 2
 Statutory jurisdiction in these proceedings is based on diversity of citizenship, 28 U.S.C. 1332. The Declaratory Judgment Act itself 'is procedural only.' Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937);[2] by the Act, 'Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction,' Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). Though statutory jurisdiction be present, however, a further jurisdictional inquiry is required to determine whether an 'actual controversy' exists. The 'word 'actual' is one of emphasis rather than of definition,' Aetna, supra, 300 U.S. at 240, 57 S.Ct. at 463. The 'controversy' is required by the Constitution, and the statutory language is merely a restatement of the Article III mandate.[3]
 
 
 3
 Although this inquiry has commanded the attention of the Supreme Court both before[4] and since the passage of the Federal Declaratory Judgment Act, the standards by which cases and controversies are distinguished from claims premature or insufficiently adverse are not susceptible of ready application to a particular case. The considerations, while catholic, are not concrete.[5] The Supreme Court itself is not unaware of this problem of definition. In a review of the proceedings after remand in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), the Court held that because Zwickler's Congressional candidate, for whom he desired to distribute literature in contravention of the questionable state statute, had, in the interim, been elected to a fourteen year term as a state judge, the First Amendment issue was mooted, and hence no actual controversy existed at the time of the hearing on remand. In Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959-960, 22 L.Ed.2d 113 (1969), the Court observed:
 
 
 4
 The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).
 
 
 5
 The Court has, however, continually emphasized the substantial degree of specificity required in declaratory judgment actions. In United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947), in refusing to pass on the propriety of contemplated political activity by government employees challenging the Hatch Act, the Court held that abstract issues do not invoke the jurisdiction of the courts:
 
 
 6
 As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite. This is as true of declaratory judgments as any other field.
 
 
 7
 In Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), the Court refused the request of two women and a physician to have declared unconstitutional Connecticut's proscription of the use or the dissemination of information concerning the use of birth control devices. The Court cautioned that federal judicial power 'is to be exercised to strike down legislation, whether state or federal, only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action.' Id. at 504, 81 S.Ct. at 1756. Thereafter, the litigants accepted the dare implicit in Mr. Justice Frankfurter's opinion. They opened birth control clinics in New Haven, Connecticut, were arrested, and again posed the constitutional question. The Court met the issue squarely and declared the statute unconstitutional, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).[6]
 
 
 8
 Similarly, the Court dismissed as premature a request by alleged members of the Communist Party that a statute requiring registration statements by the Party on a form prescribed by the Attorney General be declared unconstitutional. In Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1, 106, 81 S.Ct. 1357, 1416, 6 L.Ed.2d 625 (1960), the Court ruled that the mere promulgation of the regulation was not enough: 'The duties imposed by those provisions will not arise until and unless the Party fails to register. At this time their application is wholly contingent and conjectural.'[7] When the members subsequently appealed from an order directing them to register under the Act, however, the Court ruled that a declaratory judgment properly would lie. Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965).
 
 
 9
 Professor Wright has synthesized the teachings of the foregoing cases and others:[8]
 
 
 10
 The Supreme Court has indicated a very marked reluctance to have important issues of public law resolved by declaratory judgments. It has said that declaratory judgment procedures should not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal, and warned against grant of a declaratory judgment involving an important question of public law on the basis of a sparse and inadequate record. The Court has also said that questions of scope and constitutionality of legislation must not be decided 'in advance of its immediate adverse effect in the context of a concrete case.' (International Longshoremen's and Warehousemen's Union v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 98 L.Ed. 335 (1954)). WRIGHT, LAW of FEDERAL COURTS 100 at 449 (2d Ed. 1970).
 
 
 11
 Applying the foregoing principles to the case before us, we hold that plaintiff has failed to establish a case or controversy of sufficient concreteness or immediacy to invoke federal jurisdiction. Appellant's complaint was filed six years after the passage of the amended ordinance and thirty-two years after the original ordinance was enacted. He challenges both ordinances because they allegedly effect an unconstitutional taking of his land.
 
 
 12
 Beyond this, the complaint tells us little. Although appellant, a Florida domiciliary, apparently does not desire the premises for his own residential purposes, we are not told whether the thrust of his constitutional argument is directed against (1) the restriction for residential purposes only, (2) the original three-acre lot minimum created in the 1938 ordinance, (3) the 1964 amendment which permits, under certain circumstances, two-acre minimums, or (4) any restriction as to minimum lot size.[9]
 
 
 13
 The complaint does not tell us when appellant became the owner of the premises. It does reveal that he voluntarily and gratuitously deeded 4.9532 acres of his original tract on September 27, 1968, to the borough for public park purposes, indicating that subsequent to the amended ordinance of 1964, the tract in question consisted of 9.21 acres and was owned by appellant. Further, the complaint does not disclose whether he requested and was refused a building permit, or, if buildings have been erected, whether he has been denied occupancy. There is no allegation of a past, present, or future threat by an officer of the borough constituting an interference with his use of the premises. From the complaint, we cannot decide whether he is arguing that the ordinances are unconstitutional as applied to him, certain other owners, or to all borough property owners.
 
 
 14
 The vagueness of this complaint exacerbates the difficulty any court would have in fashioning relief at this time. Indeed, it is extremely doubtful that a Pennsylvania state court would have entertained such a challenge to the zoning ordinances under the judicial review provisions of the Municipal Planning Code, Act of July 31, 1968, P.L.No. 247, 53 Purd.Stat.Anno. 10101 et seq., with a pleading so devoid of concrete complaint. While it is true that the Code provides that no application for a subdivision approval or a building permit is necessary when the challenge is 'addressed solely to a minimum lot size or maximum density requirement,' 10801, it is essential that the complainant, in attacking the lot size or density requirement, demonstrate a specific restriction on the use of his land by an agency of the municipality or an officer thereof. We interpret the code to provide the property owner with an efficient, inexpensive method of testing an ordinance without incurring the preliminary expenses of preparing plot and construction plans and other prerequisites normally required for a building permit application, or of preparing an engineering survey normally accompanying a request for subdivision approval. Nonetheless, it is essential that there be an attack on the zoning ordinance and a refusal of relief by the municipality before there may be a proper challenge to the constitutionality of 'a minimum lot size or maximum density requirement' under the Code. This conclusion is compelled by an analysis of those provisions of the Code which limit judicial review to 'appeals from the decisions of the board of zoning appeals and appeals upon reports of the board in proceedings to challenge the validity of any ordinance or map.' 11001.
 
 
 15
 Reinforcing this interpretation is the recent decision of Roeder v. Borough Council of Hatfield, 439 Pa. 241, 266 A.2d 691 (1970) in which the court held that an appeal challenging the constitutionality of a borough zoning ordinance was premature and would not be ripe for adjudication until 'action is taken pursuant to MPC, 801 (53 Purd.Stat.Anno. 10801).' Moreover, Roeder specifically required a 'case or controversy ripe for judicial intervention * * * regardless whether the premature attack is by an action in equity or through the administrative framework.' Id. at 695.
 
 
 16
 At all events, irrespective of the treatment this complaint would receive in a state court, a state legislature cannot redefine a case or controversy under the federal constitution; it cannot redraw draw the jurisdictional metes and bounds of the federal courts. We are less persuaded by the bare assertion that jurisdiction would lie in the state courts than by the conclusion that because 'the pleadings failed to show a definite purpose on the part of the owners to use the lot for any purpose forbidden by either ordinance, * * * the case (does) not present an 'actual controversy' within the meaning of the Federal Declaratory Judgment Statute.' West v. Bank of Commerce and Trusts, 153 F.2d 566, 568 (4 Cir. 1946).
 
 
 17
 To use the formulation of the distinguished scholars, Hart and Wechsler, we are here presented with a 'doubly contingent situation': It is certain neither that appellant would be denied the use he desires of his real estate, nor that sanctions would be imposed upon him if he did.[10]
 
 
 18
 Plaintiff's reliance on Lerner v. Town of Islip, 272 F.Supp. 664 (E.D.N.Y. 1967), is misplaced. In denying a motion to dismiss a challenge to a local zoning ordinance, Lerner held merely that the doctrine of abstention in no way precluded a federal court from reviewing the application of a local zoning ordinance to the property of an allegedly aggrieved landowner. No question of ripeness or immediacy was raised. Our holding is neither consistent with nor contrary to that in Lerner.[11] Indeed in the view we take of this action, the absence of a case or controversy prohibits us from passing on the merits of plaintiff's challenge to the Fox Chapel ordinance or deciding the propriety of a federal court to entertain such a challenge.
 
 
 19
 We conclude that the district court did not err in holding that the complaint did not state an actual controversy within the meaning of the Federal Declaratory Judgment Act.
 
 
 20
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 In a case of actual controversy within its jurisdiction * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought
 
 
 [2]
 In the landmark Aetna case, the Court, speaking through Chief Justice Hughes, declared:
 A 'controversy' in this sense must be one that is appropriate for judicial determination. Osborn v. United States Bank, 9 Wheat. 738, 819, 6 L.Ed. 204. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. United States v. Alaska S.S. Co., 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. South Spring Hill Gold Min. Co. v. Amador Medean Gold Min. Co., 145 U.S. 300, 301, 12 S.Ct. 921, 36 L.Ed. 712; Fairchild v. Hughes, 258 U.S. 126, 129, 42 S.Ct. 274, 275, 66 L.Ed. 499; Massachusetts v. Mellon, 262 U.S. 447, 487, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. See Muskrat v. United States, supra, (219 U.S. 346, 356, 357, 31 S.Ct. 250, 55 L.Ed. 246); Texas v. Interstate Commerce Comm'n, 258 U.S. 158, 162, 42 S.Ct. 261, 262, 66 L.Ed. 531; New Jersey v. Sargent, 269 U.S. 328, 339, 340, 46 S.Ct. 122, 125, 70 L.Ed. 289; Liberty Warehouse Co. v. Grannis, 273 U.S. 70, 47 S.Ct. 282, 71 L.Ed. 541; New York v. Illinois, 274 U.S. 488, 490, 47 S.Ct. 661, 71 L.Ed. 1164; Willing v. Chicago Auditorium Ass'n., 277 U.S. 274, 289, 290, 48 S.Ct. 507, 509, 72 L.Ed. 880; Arizona v. California, 283 U.S. 423, 463, 464, 51 S.Ct. 522, 529, 75 L.Ed. 1154; Alabama v. Arizona, 291 U.S. 286, 291, 54 S.Ct. 399, 401, 78 L.Ed. 798; United States v. West Virginia, 295 U.S. 463, 474, 475, 55 S.Ct. 789, 793, 79 L.Ed. 1546; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 324, 56 S.Ct. 466, 472, 80 L.Ed. 688. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. Nashville, C. & St. L. Ry. Co. v. Wallace, supra, p. 263, 53 S.Ct. 345, 348, 77 L.Ed. 730 (288 U.S. 249); Turun v. United States, 270 U.S. 568, 576, 577, 46 S.Ct. 425, 426, 70 L.Ed. 738; Fidelity National Bank v. Swope, 274 U.S. 123, 132, 47 S.Ct. 511, 514, 71 L.Ed. 959; Old Colony Trust Co. v. Commissioner, supra, at page 725 (279 U.S. 716), 49 S.Ct. 499, 502, 73 L.Ed. 918. And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required. Nashville, C. & St. L. Ry. Co. v. Wallace, supra, 288 U.S. at page 264, 53 S.Ct. 345, 348, 77 L.Ed. 730. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 464, 81 L.Ed. 617.
 
 
 [3]
 Public Service Commission v. Wycoff, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); Muller v. Olin-Mathieson Co., 404 F.2d 501 (2 Cir. 1968); Brown & Root, Inc. v. Big Rock Corp., 383 F.2d 662 (5 Cir. 1967); Miller v. Udall, 368 F.2d 548 (10 Cir. 1966); Printing Plate Supply Co. v. Curtis Publishing Co., 278 F.Supp. 642 (E.D.Pa.1968)
 
 
 [4]
 Willing v. Chicago Auditorium Ass'n., 277 U.S. 274, 48 S.Ct. 507, 72 L.Ed. 880 (1928)
 
 
 [5]
 Non-jurisdictional considerations may also complicate the question of declaratory relief
 The statute says that in a case of actual controversy within its jurisdiction a federal court 'may' give a declaratory judgment. 28 U.S.C. (1948 rev.) 2201. In view of this discretionary character of the remedy, also almost universally recognized under state acts, opinions denying relief often leave it doubtful whether the court thought a controversy was lacking or simply that declaratory relief was inappropriate.
 Hart and Wechsler, The Federal Courts and the Federal System, 140 (1953).
 
 
 [6]
 Cf., the earlier case of Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943) in which the Court refused to review a Connecticut state declaratory judgment on this statute, brought by a physician on behalf of his patients, on the ground that the physician lacked standing 'to secure an adjudication of his patients' constitutional right to life' under the Fourteenth Amendment, concluding: 'Since the appeal must be dismissed on the ground that appellant has no standing to litigate the constitutional question which the record presents, it is unnecessary to consider whether the record shows the existence of a genuine case or controversy necessary to the exercise of the jurisdiction of this Court. * * *'
 
 
 [7]
 It is thus impossible to say now what effect the provisions of the Act affecting members of a registered organization will have on the Party. Cf. State of New Jersey v. Sargent, 269 U.S. 328, 46 S.Ct. 122, 70 L.Ed. 289. To pass upon the validity of those provisions would be to make abstract assertions of possible future injury, indefinite in nature and degree, the occasion for constitutional decision. If we did so, we would be straying beyond our judicial bounds. 367 U.S. at 81, 81 S.Ct. at 1402
 
 
 [8]
 Eccles v. Peoples Bank, 333 U.S. 426, 434, 68 S.Ct. 641, 645-646, 92 L.Ed. 784 (1948):
 Caution is appropriate against the subtle tendency to decide public issues free from the safeguards of critical scrutiny of the facts, through use of a declaratory judgment. * * * Where administrative intention is expressed but has not yet come to fruition (Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 324, 56 S.Ct. 466, 80 L.Ed. 888), or where that intention is unknown (Great Atlantic and Pacific Tea Co. v. Grosjean, 301 U.S. 421, 429-30), 57 S.Ct. 772, 81 L.Ed. 1193, we have held that the controversy is not yet ripe for equitable intervention.
 See also A. L. Mechling Barge Lines v. United States, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1962); Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111 (1962); 82 S.Ct. 580, 7 L.Ed.2d 604; but see Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).
 
 
 [9]
 Appellant attacks Fox Chapel Zoning ordinance applicable in 'A' residence district, originally enacted in 1938 restricting 'the minimum percentage requirement between occupied lot area and population shall be three acres, upon which one main building with all accessory buildings, including farm buildings, may be erected * * *' Ordinance 35, March 8, 1938, IV, 1, as amended by Ordinance 50, March 22, 1940, 1. In 1964 Fox Chapel Ordinance No. 259 amended Ordinance No. 35, providing that the minimum percentage requirement would not be required in a development plan consisting of a single area of not less than nine acres and permitting two-acre lots in such developments. It further provided that the three-acre minimum need not apply 'to any building lot shown on any such plan of development which area is dedicated, and accepted by, the Borough of Fox Chapel for park, recreation or conservation purposes.'
 
 
 [10]
 Hart and Wechsler, The Federal Courts and the Federal System, 139 (1953)
 
 
 [11]
 Moreover, we note that the cases relied upon in Lerner are equity actions, not declaratory judgments, bottomed on the landmark decision of Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). In Euclid, which involved a bill for mandatory injunction rather than declaratory judgment, the Court emphasized that:
 The allegations of the bill is that the ordinance of its own force operates greatly to reduce the value of appellee's land and destroy their marketability for industrial, commercial and residential uses, and the attack is directed, not against any specific provision or provisions, but against the ordinance as an entirety. Assuming the premises, the existence and maintenance of the ordinance in effect constitutes a present invasion of appellee's property rights and a threat to continue it.
 The Euclid Court relied on the doctrine expressed in Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 574, 69 L.Ed. 1070 where it was proved that 'the injury to the appellees was present and very real, not a mere possibility in the remote future. * * * Prevention of impending injury by unlawful action is a well-recognized function of courts of equity.'