POLITZ, Circuit Judge:
This case presents a convoluted factual mise-en-scene which, placed in proper perspective, grounds a straight-forward threshold legal question — jurisdiction. Finding that we have no jurisdiction, this appeal is dismissed.

Background Facts

In March of 1978, three creditors filed an involuntary petition in bankruptcy against Roger J. LeBlanc. Shortly thereafter, Le-Blanc converted the process into a Chapter XI reorganization proceeding. P. Raymond Lamonica was appointed receiver by the bankruptcy court and he commenced an investigation into LeBlanc’s property and business affairs. As a result of this investigation, Lamonica, acting as the Chapter XI receiver, filed suit in federal district court[1] alleging that LeBlanc had formed a corporation, S. L. E., Inc., and created a trust for each of his daughters, Sara, Laura and Emily (SLE Trusts), with the avowed purpose of transferring and acquiring property in defraud of his creditors.
The complaint alleged that LeBlanc incorporated S. L. E., Inc., transferred his *361 residence to the corporation in exchange for all of its stock, and then donated the stock to the SLE Trusts. Lamonica moved for revocation of the donation, acting pursuant to the provisions of article 1969 of the Louisiana Civil Code and section 70(e) of the Bankruptcy Act. The complaint further charged that LeBlanc was in the process of acquiring valuable oil and gas interests with personal funds but placing title in the name of S. L. E., Inc. Invoking Civil Code articles 1969 et seq., and sections 67(d) and 70(e) of the Bankruptcy Act, Lamonica sought avoidance of all such transactions in which the property came to be owned by S. L. E., Inc. In the alternative, the receiver asked that the transactions be declared simulations under article 2239 of the Civil Code, because LeBlanc remained in possession and control of the assets. The receiver maintained that S. L. E., Inc. was simply LeBlanc’s alter ego, and asked for recognition that the assets of S. L. E., Inc., and that of the SLE Trusts, were in fact Le-Blanc’s assets and subject to the pending Chapter XI proceeding.
The matter progressed and a plan of arrangement was prepared and found acceptable by sufficient creditors. S. L. E., Inc. submitted to the jurisdiction of the bankruptcy court. The plan provided for the transfer of assets from S. L. E., Inc. to the bankruptcy estate to fund the proposed arrangement. Notwithstanding this obligation, LeBlanc, as president of S. L. E., Inc., transferred valuable mineral assets to a corporation organized in the Cayman Islands.
On December 7, 1979, a hearing on the arrangement was conducted by the bankruptcy court, but the- plan was not approved. LeBlanc was adjudicated a bankrupt and Lamonica was appointed Trustee. On that date, Lamonica, as Trustee, filed an amended complaint which made reference to the Cayman Islands corporation and alleged that LeBlanc was wasting, concealing and diverting S. L. E., Inc. assets for his personal use, in defraud of creditors.
In the supplemental complaint, which sought relief from LeBlanc, S. L. E., Inc., the SLE Trusts and the trustees thereof, Lamonica sought the appointment of an equity receiver to manage the affairs of S. L. E., Inc. pending disposition of the case. The district court appointed Frank L. Ma-raist temporary receiver and temporarily enjoined all pertinent parties from transferring, alienating, or encumbering any assets of S. L. E., Inc., and its subsidiary SLEBCO, Inc., without prior court approval.
The district judge fixed January 11, 1980 as the date for the hearing on the Trustee’s motions for a preliminary injunction and to convert the temporary equity receivership into permanent status. On that date, by agreement, the hearing was continued to July 10, 1980, and the temporary equity receivership was continued in effect.
After a dispute over the scope of the equity receiver’s authority arose, the district court ruled that Maraist was in exclusive control of S. L. E., Inc. and that no corporate act could be taken without his express written authorization. The order clarifying the equity receiver’s authority resulted from an attempt by S. L. E., Inc.’s management to prohibit Exxon Company, U. S. A. from moving a drilling rig onto property on which it held a lease from S. L. E., Inc.’s co-owner. After clarification of his authority, the equity receiver negotiated a landowner’s consent to drilling operations to be given by S. L. E., Inc. to Exxon. Maraist applied to the district court for authority to enter into the landowner’s consent agreement, setting forth the parties’ reciprocal rights and obligations. A hearing on this application was held on April 30, 1980, and by order dated May 5, 1980, the equity receiver was authorized to execute the landowner’s consent agreement on behalf of S. L. E., Inc. No stay was obtained; Maraist executed the agreement. Defendants-appellants appeal this order.[2]
*362 At the same time the equity receiver addressed the need for liquid assets with which to pay pressing debts. Three separate proposals were presented to the district court, two involving sales of property and the third involving a compromise between S. L. E., Inc. and Martin Exploration Company, the lessee of S. L. E., Inc.’s mineral rights under certain property near Port Hudson, Louisiana. The proposed compromise with Martin called for settlement of their disputes, the forgiving of a $230,000 debt from S. L. E., Inc. to Martin, and the release of over $800,000 which was being held in escrow as a consequence of the S. L. E., Inc./Martin disagreement. At the hearing on April 30, the court considered the three proposals which were all opposed by S. L. E.,. Inc. and the SLE Trusts. The bankruptcy Trustee considered any and all acceptable. The receiver advised the district judge that any one proposal would generate sufficient funds to pay the current debts.
On May 5, 1980, the district court authorized the receiver to enter into the proposed agreement with Martin. No stay was obtained. Maraist executed the agreement, secured the funds and, with the court’s authorization, disbursed a large portion of the funds in payment of the debts. Defendants-appellants appeal the order authorizing Maraist to execute the Martin compromise.
After the present appeals were noticed, the Trustee reached an agreement with all defendants. The proposed settlement, conditioned on the approval of the bankruptcy court, provided for the termination of the action in revocation and simulation. In accordance with the proposed settlement, the equity receiver filed a final accounting with the district court. S. L. E., Inc. and the SLE Trusts filed oppositions to the return and accounting by the equity receiver, specifically challenging, among other things, the actions of the receiver in executing the landowner’s consent instrument and the Martin compromise agreement.
The objections raised by S. L. E., Inc., the SLE Trusts, and the other defendants, to the accounting of the receiver, were included in a compromise agreement signed by all of the parties on September 10, 1980.[3] The bankruptcy court approved the compromise. On a joint motion, the district court dismissed the Trustee’s suit and discharged the equity receiver. A compromise agreement and stipulation was also executed by S. L. E., Inc., the SLE Trusts, and other defendants, releasing and holding the equity receiver harmless with respect to any claim arising out of the receivership.[4] In the instruments of release and hold harmless, the defendants-appellants sought to preserve the viability of their appeal of the orders of May 5, 1980, authorizing the re *363 ceiver to execute the landowner’s consent and the Martin compromise. Like language was placed in the joint motion to dismiss and the order of dismissal.[5]
Throughout this appeal, the Trustee has taken the position that he has no interest in the appeal, having settled all disputes with S. L. E., Inc,, the SLE Trusts and other defendants. The receiver is not a party to the appeal, nor could he be; he has been discharged and relieved of further responsibilities and he has a full release from defendants-appellants. Appellants contend that their appeal continues to be viable because a decision setting aside the May 5, 1980 orders authorizing the receiver to execute the Martin and Exxon agreements would allow S. L. E., Inc. to proceed in state court against those parties. Neither Exxon nor Martin were parties to the May 5,1980 orders; neither is a party to this appeal.
Appellants’ substantive complaint is that the district court abused its discretion in authorizing the receiver to enter into the landowner’s consent agreement and the Martin compromise. Appellants may not press this claim against the receiver and thus would cast the bankruptcy Trustee in the role of adverse party, notwithstanding that all disputes between the Trustee and defendants-appellants were compromised and settled. Reciprocal releases were executed by the Trustee and the appellants; the litigation underlying this appeal was dismissed with prejudice.
Defendants-appellants have no adversary before this court. The decision as to our jurisdiction turns on that fact.

Case or Controversy

Article III of the Constitution creates and limits the judicial power of United States courts. Federal courts may not resolve questions posited in a vacuum but only those arising in a “case or controversy.” [6] The Supreme Court stated in Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937):
A “controversy” in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.
(citations omitted). This teaching, while providing substantial guidance, has inherent limitations because it is based on imprecise labeling. As our colleagues of the Third Circuit observed in McCahill v. Borough of Fox Chapel, 438 F.2d 213, 215 (3d Cir. 1971):
[T]he standards by which cases and controversies are distinguished from claims premature or insufficiently adverse are not susceptible of ready application to a particular case. The considerations, while catholic, are not concrete.
Addressing the difficulty of sharply denoting the parameters of judicial authority, the Supreme Court later mused in Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1949-50, 20 L.Ed.2d 947, 958 (1968):
Embodied in the words “cases” and “controversies” are two complementary but somewhat different limitations. In part these words limit the business of federal courts to questions presented in an adver *364 sary context and in a form historically viewed as capable of resolution through the judicial process ... Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.
Essential to the concept of a controversy, under Article III, is an on-going adversarial posture between the parties before the court. As one leading commentator suggested:
All models of cases and controversies assume the presence of at least two genuinely adversary parties. Adversariness is desired both to establish the need for any adjudication, and to provide the foundation for sound adjudication. Judicial power is not exercised to offer advice to a single party, nor to confirm the wisdom of private settlements already reached and honored. Nor is judicial power exercised when courts doubt the existence of sufficient adversary interest to stimulate the parties to a full presentation of the facts and arguments, which in our adversary system is available only from the parties. These policies are reflected in doctrines of standing, ripeness, and mootness, which address the quality of adver-sariness in a refined, if often confusing, attempt to measure the need for adjudication and the probable litigating capacities of the parties.
C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3530 (1975). (Emphasis added.) See Moore v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 47 (1971).
Mootness is one of the doctrines reflecting on the essential adversarial element. If a dispute has been settled or resolved, or if it has evanesced because of changed circumstances, including the passage of time, it is considered moot. With the designation of mootness comes the concomitant designation of non-justiciability, unless one of the exceptions inhere. Laurenzo v. Mississippi High Sch. Activities Ass’n, 662 F.2d 1117, 1120 (5th Cir. 1981) (quoting DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705-06, 40 L.Ed.2d 164 (1974) (“The starting point for analysis [of the mootness issue] is the familiar proposition that ‘federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.’ North Carolina v. Rice, 404 U.S. 244 [92 S.Ct. 402, 30 L.Ed.2d 413] (1971).”).
In the appeal before us, all disputes between the parties to the underlying litigation have been compromised and settled. All objections and complaints directed at the equity receiver’s performance have likewise been resolved. The efforts made by appellants to preserve the justiciability of the appeals taken prior to the compromise settlement and dismissal of the litigation out of which the appeals arose, are keen and astute, but unavailing. The settlement released opposing litigants, rendering the appeal moot. See Osborne v. Coleman Co., Inc., 592 F.2d 1239, 1241 (5th Cir. 1979), on appeal after remand, 602 F.2d 725 (5th Cir. 1979).
There being no justiciable dispute presented between the parties to this appeal, and in light of the compromise settlement and dismissal with prejudice of the underlying litigation, we conclude that we are without jurisdiction to entertain this appeal.
APPEAL DISMISSED.

. The federal district court had jurisdiction pursuant to §§ 70(e)(3) and 67(e) of the old Bankruptcy Act, 11 U.S.C. §§ 107(e), 110(e)(3).

. With reference to the effect on the appeal of a failure to secure a stay order, see American Grain Ass’n v. Lee-Vac, Ltd., 630 F.2d 245 (5th Cir. 1980). Because of our disposition of this appeal we do not address the applicability of the holding and rationale of Lee-Vac to the factual situation herein presented.

. The release, signed by S. L. E., Inc., the SLE Trusts, Lamonica, and others states:
this release is being executed in consideration of the parties entering into the settlement and dismissal with prejudice of the suit entitled “P. Raymond Lamonica, as Trustee of the Bankruptcy Estate of Roger J. Le-Blanc, versus S. L. E., Inc., et al”, being Civil Action No. 78-349-B on the docket of the United States District Court for the Middle District of Louisiana, in full settlement, satisfaction and compromise of all claiins, demands, and causes of action asserted by P. Raymond Lamonica, as Trustee for the Bankruptcy Estate of Roger J. LeBlanc, against the defendants in said suit. The plaintiff in said action and his attorneys hereby release all defendants and their attorneys, officers, directors, employees, trustees and settlors from any and all liability for claims asserted in said suit as alleged in the original and amended complaints filed therein. All defendants, their attorneys, officers, directors, employees, settlors, and trustees hereby and do by these presents release the said plaintiff in said suit and his attorneys from any and all liability arising out of the filing and prosecution of said suit.

. The compromise agreement and stipulation states:
S. L. E., Inc., Roger J. LeBlanc, Sally Le-Blanc Brinkley, and William H. Jeffress, Jr. as Trustees for the Sara, Laura, and Emily LeBlanc Trust (SLE Trusts) shall release Receiver, his attorneys, agents, employees, and representatives and S. L. E., Inc., SLE Trusts, and Roger J. LeBlanc shall hold them harmless from any liability of any kind and nature whatsoever by whomever asserted, arising out of any acts or omissions during the time of the receivership, including the cost of defense against any liability so asserted, including reasonable attorney’s fees.

. The order of dismissal provides: “IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above captioned suit be and is hereby dismissed with prejudice at defendants’ costs, reserving to the defendants all rights they may have under the appeal presently pending in the Fifth Circuit Court of Appeals from certain orders of the Honorable Jack Gordon, United States District Judge, herein.”

. The two terms are often used interchangeably. It has been suggested that the only difference between the two is the limitation of “controversy” to civil actions. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).