GRAND METROPOLITAN PLC and
Wendell Investments
Limited, Plaintiffs,

v.

The PILLSBURY COMPANY,
Defendant.

Civ. A. No. 88–555 LON.

United States District Court,
D. Delaware.

Nov. 1, 1988.

R. Franklin Balotti, C. Stephen Bigler, Nathan B. Ploener, and Robert J. Shaughnessy, of Richards, Layton & Finger, Wilmington, Del.; Cravath, Swain & Moore, of counsel, for plaintiffs.

Stephen J. Rothschild, Stuart L. Shapiro, Randolph K. Herndon, David J. Margules, Wilmington, Del., and George A. Zimmerman, and Joseph Guglielmelli, New York City, of Skadden, Arps, Slate, Meagher & Flom, for defendant.

OPINION

LONGOBARDI, District Judge.

On October 4, 1988, Plaintiffs Grand Metropolitan PLC and Wendell Investments Limited (collectively "Grand Met") announced an offer to purchase all the outstanding shares of common stock (the "tender offer") of Defendant The Pillsbury Company ("Pillsbury") at a price of $60.00 net per share and associated rights. Docket Item ("D.I.") 1, ¶ 1. In Count I of its Second Amended Verified Complaint ("Complaint"), D.I. 29, Grand Met asked the Court to (1) declare that the laws of the State of Delaware govern the internal corporate affairs of Pillsbury to the exclusion of any other state with respect to the tender offer and any subsequent merger; (2) declare that the antitakeover statutes of any state other than Delaware, including but not limited to those of Florida, Louisiana and Tennessee,[1] are unconstitutional

---

1. Florida has passed two statutes (collectively the "Florida Business Combination Statutes") that purport to govern the internal affairs of

non-Florida corporations: the Florida Affiliated Transaction Statute, Fla.Stat. § 607.108, which seeks to restrict the ability of a person or entity

and inapplicable to the tender offer and any subsequent merger; (3) enjoin Pillsbury and its successors and assigns, its directors, officers, agents, employees, attorneys, subsidiaries and stockholders, and persons acting in concert or participation with it and all other persons that have actual notice of the Order from invoking the antitakeover statutes of Florida, Louisiana or Tennessee, or of any other state other than Delaware; and (4) enjoin Pillsbury and its successors and assigns, its directors, officers, agents, employees, attorneys, subsidiaries and stockholders, and persons acting in concert or participation with it and all other persons that have actual notice of the Order from commencing any judicial proceeding in any forum other than this Court regarding the applicability or validity of the antitakeover statutes of Florida, Louisiana or Tennessee, or of any other state other than Delaware.

Grand Met applied for a temporary restraining order and moved for a preliminary injunction seeking remedies three and four noted above. D.I. 3. This Court denied the temporary restraining order because Grand Met did not establish that the denial of injunctive relief would result in irreparable harm. D.I. 14. Pillsbury moved to dismiss Count I of the Complaint on the grounds of (1) lack of subject matter jurisdiction due to a lack of case or controversy; and (2) the principle of *forum non conveniens.* D.I. 20.

On October 25, 1988, the Court held a hearing on Pillsbury's motion to dismiss and Grand Met's motion for a preliminary injunction. During oral argument, counsel for Grand Met revised its requested relief. Instead of asking the Court to enjoin Pillsbury from invoking *any* state antitakeover statute other than Delaware's, counsel stated that Grand Met wanted the Court to enjoin Pillsbury from invoking only the Florida, Louisiana and Tennessee statutes. Transcript, D.I. 38 at 35. Grand Met's counsel explained that such an injunction would require the Court to order Pillsbury to (1) "opt-out" of the Florida Business Combination Statutes and (2) not "opt-in" to either the Louisiana Control–Share Acquisitions Statute or the Tennessee Authorized Corporation Protection Act. *Id.*

### DISCUSSION

■ In this case, Grand Met's request for declaratory relief is based upon 28 U.S. C. § 2201 which provides in pertinent part: "In the case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration...." The presence of an "actual controversy" is a perquisite to the court's jurisdiction in an action seeking a declaratory judgment. *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). The requirement of an actual controversy represents a congressional recognition of the limitation of federal judicial power contained in the "case or controversy" provision of Article III, section 2 of the Constitution. *See Diamond v. Charles,* 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986); *Bender v. Williamsport School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Furthermore, the standard for finding a justiciable "case or controversy" is not any less stringent in a declaratory

to engage in business combinations with the acquired corporation, and the Florida Control–Share Acquisitions Statute, Fla.Stat. § 607.109, which seeks to restrict the ability of certain shareholders to vote shares of that foreign corporation. Louisiana has recently adopted a new Foreign Corporation Control–Share Acquisitions Statute, La.Rev.Stat.Ann. § 12:140.11 et seq., which purports to regulate control share acquisitions of corporations organized under the laws of a state other than Louisiana. The Tennessee Authorized Corporation Protection Act purports to regulate the internal affairs of any foreign corporation that is required to obtain a certifi-cate of authority from the Tennessee Secretary of State that meets two of eight specified criteria. 48 Tenn.Code Ann. ch. 35 § 403. The Tennessee statute purports to regulate foreign corporations by forcing them to comply with two Tennessee statutes that are applicable to domestic corporations: the Tennessee Business Combination Act, which purports to limit the right of certain shareholders to engage in a business combination with the corporation of which it is a shareholder, and the Tennessee Control Share Acquisition Act, which purports under certain circumstances to restrict the right of person acquiring control to vote his shares.

judgment action than in an action seeking traditional coercive relief. *Bender*, 475 U.S. at 541, 106 S.Ct. at 1331; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–13, 103 S.Ct. 1660, 1670–71, 75 L.Ed.2d 675 (1983).

■■■ Whether a party has presented a justiciable case or controversy in an action seeking declaratory relief or merely has presented an abstract or hypothetical question must be determined on a case-by-case basis. *Babbit v. United Farm Workers National Union*, 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979); *Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp.*, 257 F.2d 485, 489 (3rd Cir.1958) (whether there is an actual controversy is a question which turns on the facts of each individual case). The United States Supreme Court has provided a well-established principle that the "controversy must be definite and concrete, touching the legal relations of parties having adverse legal interest ... and must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). Although the considerations set forth in the *Aetna Life* case are something less than a sure guide to decision, *McCahill v. Borough of Fox Chapel*, 438 F.2d 213, 215 (3rd Cir.1971), the Supreme Court has stated that in determining the difference between an abstract question and a controversy in an action for declaratory judgment, the basic "question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The case or controversy must have existed at the time the complaint was filed. *Luis v. Dennis*, 751 F.2d 604, 608 (3rd Cir.1984).

The Court applied this teaching in *Electric Bond & Share Co. v. SEC*, 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936 (1938). In that case, the defendants were a group of holding companies that controlled, through stock ownership, the service of gas and electricity to the public in various states. The SEC brought suit against Electric Bond and fourteen associated public utility companies to enforce the filing requirements of sections 4(a) and 5(b) of the Public Utility Holding Company Act of 1935, 15 U.S.C. § 79e. The defendants contested the validity of Sections 4(a) and 5(b) and sought by cross bill a declaratory judgment that the entire Act was unconstitutional. *Id.* at 426–28, 58 S.Ct. at 679–80. The District Court in the case dismissed the cross bill for lack of any actual controversy because there was no threat of enforcement of the entire Act and the Supreme Court affirmed. By seeking a judgment that each and every provision of the Act is unconstitutional, the defendants essentially sought "an advisory decree [about the validity of the other provisions based] upon a hypothetical set of facts." *Id.* at 443, 58 S.Ct. at 687. Because only Sections 4(a) and 5(b) were involved in the litigation, the Court observed that the situation presented "a variety of hypothetical controversies which may never become real. We are invited to enter into a speculative inquiry for the purpose of condemning statutory provisions the effect of which in concrete situations, not yet developed, cannot now be definitely perceived. We must decline that invitation." *Id.*; *accord Communist Party of Am. v. Subversive Activities Control Bd.*, 367 U.S. 1, 70–81, 81 S.Ct. 1357, 1396–02, 6 L.Ed.2d 625 (1961).

The Supreme Court further developed this line of reasoning in *International Longshoremen's & Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954). The labor union in *Boyd* had alien members who were working temporarily in Alaska. The union requested the Court to enjoin the District Director of Immigration and Naturalization at Seattle from treating its alien members, under Section 212(d)(7) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(d)(7), as aliens entering the United States for the first time. The Union also

asked the Court to declare Section 212(d)(7) unconstitutional if it required its members to be treated as first-time aliens. *Id.* at 222-23, 74 S.Ct. at 447–48. The Court rejected the Union's request:

> Appellants in effect asked the District Court to rule that a statute the sanctions of which had not been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise. That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.

*Id.* at 223–24, 74 S.Ct. at 448–49; *see also McCahill v. Borough of Fox Chapel,* 438 F.2d 213 (3rd Cir.1971) (zoning ordinances could not be declared unconstitutional because it was unclear whether they would have denied the plaintiff the use of his land or whether sanctions would have been imposed upon him if he had tried to use his land as desired).

 Grand Met wants this Court to remove any *potential* obstacles to its tender offer. To date, Pillsbury has not sought the protection afforded by any of the anti-takeover statutes by "opting in" to either the Louisiana Control–Share Acquisitions Statute or the Tennessee Authorized Corporation Protection Act and Pillsbury has not sought the enforcement of the Florida Business Combination Statutes in any judicial forum. Consequently, Grand Met is inviting this Court "to enter into a speculative inquiry for the purpose of condemning statutory provisions the effect of which in concrete situations, not yet developed, cannot now be definitely perceived." *Electric Bond,* 303 U.S. at 443, 58 S.Ct. at 687. The situation is therefore not "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden,* 394 U.S. at 108, 89 S.Ct. at 959. "Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." *Boyd,* 347 U.S. at 223, 74 S.Ct. at 448.[2]

In their briefs and in oral argument, counsel for Grand Met have analogized the present case to *Edgar v. MITE Corp.,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987), and *TLX Acquisition Corp. v. Telex Corporation,* 679 F.Supp. 1022 (W.D.Okla.1987). D.I. 38 at 20, 23, 24–25. All three of these cases are distinguishable from the facts present in the case at bar.

In *Edgar v. MITE Corp.,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) (*"MITE"*), the MITE Corp., a corporation organized under the laws of Delaware, made a tender offer for Chicago Rivet & Machine Co. ("Chicago Rivet"), an Illinois corporation. On the day of the offer, MITE filed suit in the United States District Court for the Northern District of Illinois seeking a declaratory judgment that the Illinois Business Takeover Act, Ill.Rev.Stat. ch. 121 1/2, ¶ 137.51 *et seq.,* was pre-empted by the Williams Act and violated the Commerce Clause. MITE also sought a temporary restraining order prohibiting the Illinois Secretary of State from enforcing the act. Chicago Rivet responded by suing MITE in Pennsylvania state

---

**2.** Grand Met's motion could be construed as asking the Court to shield it from the risks inherent in any business transaction. The Court, however, is not an insurer against business risks. *Cf. FMC Corp. v. R.P. Scherer Corp.,* 545 F.Supp. 318, 322 (D.Del.1982) (frustration of merger by the legitimate actions of a business rival does not constitute injury for purposes of a preliminary injunction); *Newell Co. v. Wm. E. Wright Co.,* Del.Ch., 500 A.2d 974, 985 (1985) (potential reduction in value of stock of offeror should board of directors adopt plan to restrict voting rights of stock is merely a business risk and does not constitute injury for purposes of injunctive relief).

court alleging that the offer violated the Pennsylvania Takeover Disclosure Law, Pa.Stat.Ann., tit. 70, § 71 *et seq.* (Purdon Supp.1982–83). The United States District Court for the Western District of Pennsylvania, to which MITE had the case removed, denied Chicago Rivet's temporary restraining order.

Afterward, the Illinois Secretary of State notified MITE that he would order MITE to stop the tender offer on the ground that it would violate the Illinois statute. *MITE,* 457 U.S. at 628–29, 102 S.Ct. at 2633–34. The next day, Chicago Rivet notified MITE by letter that it intended to file suit in Illinois state court to enjoin the proposed tender offer and MITE renewed its request for injunctive relief in the District Court for the Northern District of Illinois. *Id.* Thereafter, the district court issued a preliminary injunction prohibiting the Illinois Secretary of State from enforcing the Illinois Act against MITE's tender offer for Chicago Rivet. *Id.* In a plurality opinion by Justice White, the Supreme Court affirmed the district court's granting of the preliminary injunction and held that the several provisions of the Illinois Act were pre-empted by the Williams Act and that the Illinois Act unduly burdened interstate commerce in violation of the Commerce Clause. *Id.* at 646, 102 S.Ct. at 2642.

In *MITE,* the target affirmatively invoked the anti-takeover statute in its suit to challenge the tender offer. That invocation brought the validity of the statute squarely into question. In contrast, Pillsbury has not invoked any antitakeover statutes. Their validity is, therefore, not before the Court at this time. Grand Met endeavors to obtain this Court's assurance that various statutes do not govern its tender offer *before* anyone has claimed that they do. In the absence of such a controversy, it would be inappropriate for this Court to consider the constitutionality of the state antitakeover statutes allegedly at issue in the present case.

In *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed. 2d 67 ("CTS"), Dynamics Corporation of America ("Dynamics"), already an owner of 9.6% of CTS, announced a tender offer to purchase an additional million shares of CTS, which would have brought its ownership interest to 27.5%. *CTS,* 107 S.Ct. at 1642. In addition, Dynamics filed suit in the United States District Court for the Northern District of Illinois alleging that CTS had violated federal securities laws. *Id.* Thereafter, CTS, an Indiana corporation, elected to be governed by the provisions of the Indiana Control Share Acquisitions Act which has provisions similar to the antitakeover statutes Grand Met alleges to be at issue in the present case. Ind. Code § 23–1–17–1 *et seq.* The District Court granted Dynamics' motion for a preliminary injunction holding that the Indiana Act is pre-empted by the Williams Act and the Court of Appeals for the Seventh Circuit affirmed. The Supreme Court reversed, upholding the validity of the Indiana Act and finding that the Act was consistent with the provisions and purposes of the Williams Act and was not thereby pre-empted. *CTS.* 107 S.Ct. at 1639. The Court also held that the Indiana Act does not violate the Commerce Clause. *Id.* at 1640.

Because CTS's invocation of the statute meant that the act could apply to the tender offer, the validity of the Indiana statute had to be addressed to establish the rights of the parties involved in the offer. In contrast, Pillsbury has not invoked any antitakeover statutes; whether any eventually will become an issue in this litigation is pure conjecture.

In addition, Grand Met asserts that the precedent established in *MITE* and *CTS* was adopted in *Telex,* 679 F.Supp. 1022. In *Telex,* TLX, made a cash tender offer for all the outstanding shares of Telex, a Delaware corporation. Telex, however, had its principal place of business, as well as all of its officers, employees, and assets, in Oklahoma. 679 F.Supp. at 1025 n. 6. The State of Oklahoma enacted the Oklahoma Control Shares Acquisition Act, Okla.Stat. tit. 18, § 1145 *et seq.,* which sought to regulate tender offers made for shares of foreign corporations in a manner similar to the antitakeover statutes Grand Met alleges are at issue in the present case. TLX filed

suit in the United States District Court for the Western District of Oklahoma seeking a temporary restraining order and preliminary injunction restraining Telex, the Administrator of the Oklahoma Securities Commission, and the Secretary of State and Attorney General of Oklahoma from attempting to invoke, apply or enforce the voting rights provisions of the Oklahoma Control Shares Acquisition Act. *Id.* In addition, the plaintiff requested that the injunctive relief be applied to restrain the defendants from commencing any action in any other forum to invoke, apply or enforce the Oklahoma Control Shares Act.

The court in *Telex* issued a temporary restraining order and also a preliminary injunction preventing either Telex or the Administrator of the Oklahoma Securities Commission, the Secretary of State and Attorney General of Oklahoma from attempting to invoke, apply or enforce the voting rights provisions of the Oklahoma Control Shares Acquisition Act with respect to the tender offer by TLX. *Id.* at 1033–34. The court, however, denied the plaintiff's application for injunctive relief to prevent the defendant or the state officers from commencing an action in any other forum to invoke, apply or enforce the Oklahoma Control Shares Act. *Id.* at 1034. However, Grand Met has not challenged the constitutional validity of the Delaware statute in the present action. Instead, Grand Met has asked this Court to make a sweeping declaration that other state antitakeover statutes are inapplicable or unconstitutional. Thus, Telex is distinguishable and does not govern Grand Met's application for injunctive and declaratory relief.

To utilize this Court's jurisdiction under these speculative and contingent circumstances would constitute an abuse of the Declaratory Judgment Act. Defendant's motion to dismiss Count I of the Complaint is hereby granted. Defendant's motion on *forum non conveniens* and the Plaintiffs' motion for a preliminary injunction are mooted by the decision.